UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/26/2020
```

-------------------------------------------------------------------X

THE KOGAN LAW GROUP, P.C.,                          :
                                                    :
                                                    :
                                    Plaintiff,      :
                                                    :
          -against-                                 :               1:20-cv-1012-GHW
                                                    :
ROBERT H. BRACE, BEVERLY O. BRACE,                  :          MEMORANDUM OPINION
RANDALL J. BRACE, RONALD D. BRACE,                  :               AND ORDER
ROBERT BRACE FARMS, INC., and                       :
ROBERT BRACE & SONS, INC.,                          :
                                                    :
                                    Defendants.     :
-------------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

       Robert Brace and his businesses have been locked in an environmental dispute with the

United States Government for more than three decades.  Robert and his wife, Beverly Brace, met

Lawrence Kogan—the principal and namesake of the Kogan Law Group ("KLG")—at a conference

in New York in 2016.  KLG is an environmental law firm.  Kogan agreed to defend Robert Brace,

Robert Brace Farms, Inc. and Robert Brace & Sons, Inc. (the "Client Defendants") in the

environmental lawsuit.  KLG served as counsel to the Client Defendants for about three years until

the Client Defendants terminated their engagement agreement with the firm.

       KLG sued, alleging that the Braces had not paid their legal bills.  Defendants move to

dismiss for lack of personal jurisdiction and, in the alternative, to transfer venue to the Western

District of Pennsylvania.  The Court has personal jurisdiction over the Client Defendants because

they formed an attorney-client relationship with KLG.  But the Court lacks jurisdiction over Beverly,

Randall, and Ronald Brace (the "Non-Client Defendants") because they did not sign the engagement

agreement.  Because the Court lacks jurisdiction over some Defendants and for the other reasons

described below, it will transfer this case to the Western District of Pennsylvania.  Defendants'

motion to dismiss for lack of personal jurisdiction is therefore DENIED but their motion to transfer venue is GRANTED.

## I. BACKGROUND

### A. Facts[1]

KLG practices environmental law.  Declaration of Lawrence A. Kogan ("Kogan Dec."), Dkt No. 52, ¶ 2.  Lawrence Kogan is a solo practitioner who manages the practice.  *Id.*  It is a New York firm.  *Id.*  Both Robert Brace Farms, Inc. and Robert Brace & Sons, Inc. are incorporated and have their principal place of business in Pennsylvania.  Compl. ¶ 4.  Robert and Beverly Brace are shareholders and officers of Robert Brace Farms.  Declaration of Robert H. Brace on Behalf of Robert Brace Farms, Inc., Dkt No. 44, ¶ 2.  Robert, Randall, and Ronald Brace are shareholders and officers of Robert Brace & Sons.  Declaration of Robert H. Brace on Behalf of Robert Brace & Sons, Inc., Dkt No. 45, ¶ 2.  Robert, Beverly, Randall, and Ronald Brace are Pennsylvania citizens and residents.  Declaration of Robert Brace ("Robert Brace Dec."), Dkt No. 40, ¶ 3; Declaration of Beverly Brace ("Beverly Brace Dec."), Dkt No. 41, ¶ 3; Declaration of Randall Brace ("Randall Brace Dec."), Dkt No. 42, ¶ 3; Declaration of Ronald Brace ("Ronald Brace Dec."), Dkt No. 43, ¶ 3.

In October 2016, Robert and Beverly Brace met Kogan at an environmental law and policy conference in upstate New York.  Robert Brace Dec. ¶ 14; Beverly Brace Dec. ¶ 13.  At the conference, Robert and Beverly Brace and Kogan discussed whether Kogan could represent them in an environmental dispute with the federal government in Pennsylvania (the "Pennsylvania Litigation").  Kogan Dec. ¶¶ 10-11; Robert Brace Decl. ¶ 15.

The parties dispute who solicited whom at the New York conference.  Kogan says that Robert and Beverly Brace asked him to represent them.  Kogan Dec. ¶¶ 13-15.  Robert Brace counters that Kogan solicited him at the conference.  Robert Brace Decl. ¶ 15.  In any event, Kogan

---

[1] These facts are drawn from KLG's complaint ("Compl."), Dkt No. 1, and the declaration of Lawrence A. Kogan ("Kogan Dec."), Dkt No. 52.

and the Braces began exchanging emails and telephone calls about Kogan representing the Brace family in the Pennsylvania Litigation in January 2017. Kogan Dec. ¶¶ 14-27. Later that month, Kogan visited the Braces at their offices in Pennsylvania. *Id.* ¶ 28; Robert Brace Dec. ¶¶ 16-17.

About a week after Kogan's visit, the Client Defendants signed an engagement agreement (the "Engagement Agreement") with KLG. *See* Engagement Agreement, Dkt No. 1-2; Kogan Dec. ¶ 29; Robert Brace Dec. ¶ 16. The Engagement Agreement is governed by New York law. *See* Engagement Agreement at 6. Robert Brace executed the Engagement Agreement in Pennsylvania in his individual capacity and as a corporate representative of Robert Brace Farms and Robert Brace & Sons. Kogan Dec. ¶ 29; Robert Brace Dec. ¶ 16. Beverly, Ronald, and Randall Brace did not sign the Engagement Agreement. After the parties executed the Engagement Agreement, Robert Brace emailed Kogan more documents related to the Pennsylvania Litigation. Kogan Dec. ¶ 30.

KLG represented the Client Defendants in the Pennsylvania Litigation. During that period, KLG conducted "extensive factual and expert discovery" including 26 depositions. Compl. ¶¶ 34-35. KLG also retained an "independent wetland expert[]" to assist its defense in the Pennsylvania Litigation. *Id.* ¶ 36.

During KLG's representation, Kogan attests that Beverly, Ronald, and Randall Brace emailed him and called him in New York. Kogan Dec. ¶ 37. Kogan drafted a declaration for Beverly Brace, which she revised and emailed back to Kogan. *Id.* ¶ 38. He also drafted affidavits for Ronald and Randall Brace, both of whom also emailed revisions to Kogan. *Id.* ¶ 41. Beverly Brace also signed some checks that paid for KLG's services. *Id.* ¶ 39. Kogan traveled to Pennsylvania for dinner meetings with the Brace family, including the Non-Client Defendants, at least thirteen times while KLG represented the Client Defendants. *Id.* ¶ 45. The parties discussed the Pennsylvania Litigation during these meetings. *Id.* But no Defendant traveled to New York in connection with the Pennsylvania Litigation. Robert Brace Dec. ¶¶ 18-19; Beverly Brace Dec. ¶¶ 11-15; Randall Brace Dec. ¶¶ 12-15; Ronald Brace Dec. ¶¶ 12-15.

KLG began to have billing disputes with the Client Defendants in the summer of 2018. *See* Compl. ¶ 45. Given the posture of those cases, however, Kogan did not believe that the court overseeing the Pennsylvania Litigation would permit KLG to withdraw as counsel. *See id.* ¶¶ 52-53 & n.5. So he continued to perform work on that litigation even after the fee dispute began. Eventually, KLG alleges, the Client Defendants stopped paying their bills altogether. *See id.* ¶ 74. KLG alleges that it is owed $479,639.70 without interest. *Id.* The Client Defendants have also allegedly refused to pay $72,220.13 to the independent wetland expert that KLG retained. *Id.* ¶ 77. KLG expects that the expert may sue it for the unpaid invoice. *Id.* ¶ 78.

Robert Brace, in both his individual capacity and as "Majority Owner-Manager" of Robert Brace Farms and Robert Brace & Sons, formally terminated the Engagement Agreement in August 2019. *Id.* ¶ 81. The court presiding over the Pennsylvania Litigation granted KLG's motion to withdraw as counsel in that case in September 2019. *Id.* ¶ 83.

## B. Procedural History

KLG sued Defendants here in February 2020. Dkt No. 1. The complaint states causes of action for breach of contract, quantum meruit, unjust enrichment, and breach of the implied covenant of good faith and fair dealing. *Id.* ¶¶ 86-125. It also seeks to pierce the corporate veil of Robert Brace Farms and Robert Brace & Sons for claims against Beverly, Robert, and Randall Brace. *Id.* ¶¶ 126-151.

Defendants moved to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue to the Western District of Pennsylvania. Dkt Nos. 38-47. KLG opposed, Dkt Nos. 52-53, and Defendants replied, Dkt No. 59.

## II. DISCUSSION

### A. Motion to Dismiss for Lack of Personal Jurisdiction

#### 1. Legal Standard

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citing *In re Magnetic Audiotape Antitrust Litig.,* 334 F.3d 204, 206 (2d Cir.2003) (per curiam)). To defeat a jurisdiction-testing motion, the plaintiff's burden of proof "varies depending on the procedural posture of the litigation." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). At the pleading stage—and before discovery—a plaintiff need make only a *prima facie* showing that jurisdiction exists. *See id.* at 84-85; *see also Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167-68 (2d Cir. 2015) ("In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." (quotation omitted)).

Courts may rely on materials outside the pleading in considering a motion to dismiss for lack of personal jurisdiction. *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). If a court considers only pleadings and affidavits, the plaintiff's *prima facie* showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)). "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (quotation omitted). But if the parties present conflicting affidavits, "all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993) (citation omitted).

"The lawful exercise of personal jurisdiction by a federal court requires satisfaction of three primary requirements." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012). "First, the plaintiff's service of process upon the defendant must have been procedurally proper." *Id.* (citing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999); *In re Kalikow*, 602 F.3d 82, 92 (2d Cir. 2010)). Defendants do not dispute that they were properly served.

"Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective. The available statutory bases in federal courts are enumerated by Federal Rule of Civil Procedure 4(k)." *Id.* Here, as in *Licci*, "the plaintiff[] rel[ies] solely upon Rule 4(k)(1)(A), which provides that 'serving a summons establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.'" *Id.* (quoting Fed. R. Civ. P. 4(k)(1)(A)) (alterations omitted). The Court "therefore look[s] to New York law in determining whether personal jurisdiction is available in New York[.]" *Id.* at 60.

"Third, the exercise of personal jurisdiction must comport with constitutional due process principles." *Id.* Again as in *Licci*,

> because the plaintiffs' assertion of personal jurisdiction rests upon a state long-arm statute, the relevant constitutional constraints are those imposed by the Due Process Clause of the Fourteenth Amendment. The constitutional analysis under the Due Process Clause consists of two separate components: the "minimum contacts" inquiry and the "reasonableness" inquiry. The "minimum contacts" inquiry requires us to consider "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." The "reasonableness" inquiry requires us to decide "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case."

*Id.* (quoting *Chloé*, 616 F.3d at 164).

### 2. Application

#### a. Client Defendants

The Court has personal jurisdiction over the Client Defendants under New York's long-arm statute. Plaintiff relies on N.Y. C.P.L.R. § 302(a)(1) as the statutory basis for jurisdiction.

N.Y. C.P.L.R. § 302(a) provides, in pertinent part, that a court "may exercise personal jurisdiction over any non-domiciliary who in person or through an agent transacts any business within the state," so long as the plaintiff's "cause of action arises from" that "transaction." So, in determining whether personal jurisdiction may be exercised under section 302(a)(1), "a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'arises from' such a business transaction."

*Id.* (quoting N.Y. C.P.L.R. § 302(a) and *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)) (alterations omitted).

The Court has jurisdiction over the Client Defendants. The New York Court of Appeals examined the circumstances in which the retention of a New York attorney is adequate to establish personal jurisdiction over an out-of-state client in *Fischbarg v. Doucet*, 9 N.Y.3d 375 (2007). There, defendant Doucet and a corporation she controlled were "California resident[s]" who had engaged the plaintiff Fischbarg, a New York lawyer, to sue an Oregon corporation. *Id.* at 377. Fischbarg never left New York to work on the case. *Id.* at 378. But Doucet "repeatedly communicated with [the] plaintiff" by telephone, email, fax, and snail mail "in New York." *Id.* Fischbarg sued Doucet because of a dispute over Fischbarg's fee retainer. *Id.*

*Fischbarg* concluded that those facts were adequate to establish personal jurisdiction over the defendants under the New York long-arm statute. The Court of Appeals noted that New York courts have jurisdiction even if "the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Id.* (quoting *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006)). "Purposeful activities are those with which a defendant, through volitional acts, 'avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws[.]'" *Id.* (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382 (1967)).

*Fischbarg* held that the defendants' "purposeful attempt to establish an attorney-client relationship here and their direct participation in that relationship via calls, faxes, and e-mails that they projected into this state over many months" permitted the court to exercise jurisdiction over

7

them. *Id.* at 380. The Court of Appeals reasoned that "[t]he quality of [the] defendants' contacts here establishes a transaction of business in New York" because, among other things, the "[d]efendants sought out [the] plaintiff in New York and established an ongoing attorney-client relationship with him" and the "defendants communicated regularly with him in this state." *Id.* 380-81.

The Court of Appeals focused on the defendants' decision to retain the plaintiff. The defendants "contacted [the] plaintiff here to retain him and thereby projected themselves into our state's legal services market." *Id.* at 382 (citation omitted). "Thereafter, on their own volition, they continued their communications with [the] plaintiff here, utilizing his services and thus 'invoking the benefits and protections of our laws relating to' the attorney-client relationship." *Id.* (quoting *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 18 (1970)). Indeed, the "defendants solicited [the] plaintiff here by telephone and mail and regularly communicated with him in New York during the course of an attorney-client relationship." *Id.* at 383. So there was a "substantial relationship between [the] plaintiff's action for fees accrued during his representation of [the corporation] in the Oregon action, [the] defendants' solicitation of [the] plaintiff in New York to represent [the corporation] in that action and [the] defendants' communications with [the] plaintiff in this state with respect to the Oregon matter." *Id.* at 384 (citation omitted). The defendants' actions "form[ed] the basis of this action[;]" they were "not 'merely coincidental' occurrences that ha[d] a tangential relationship" to the "plaintiff's claims for legal fees." *Id.* (quoting *Johnson v. Ward*, 4 N.Y.3d 516, 520 (2005)).

In sum, "when defendants projected themselves into New York via telephone to solicit plaintiff's legal services, they necessarily contemplated establishing a continuing attorney-client relationship with him." *Id.* at 385. They then "repeatedly project[ed] themselves into New York—via telephone, mail, e-mail and facsimile—to advance their legal position in the Oregon action through communications with plaintiff[.]" *Id.* In doing so, the "defendants purposefully availed

themselves of the benefits and protections of New York's laws governing lawyers." *Id.* For those reasons, New York courts had jurisdiction over the defendants.

So too here. The Client Defendants signed an Engagement Agreement with KLG. Robert Brace then repeatedly projected himself into New York by calling and emailing Kogan. When the Client Defendants formed an attorney-client relationship with Kogan, they "availed themselves of the benefits and protections of New York's laws governing lawyers." *Id.*

The Client Defendants have an even stronger connection to New York than the defendants in *Fischbarg* did. For one, Robert Brace met Kogan at a conference in New York. That fact strengthens the Court's conclusion that the Court's exercise of jurisdiction is appropriate under *Fischbarg*, in which the defendants never set foot in New York.

The Engagement Agreement's New York choice of law provision also reinforces the conclusion that the Court has jurisdiction over the Client Defendants. *See* Engagement Agreement at 6. "A choice of law clause is a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004) (citation omitted); *see also Rosenblatt v. Coutts & Co. AG*, 750 F. App'x 7, 11 (2d Cir. 2018) (noting that a "choice-of-law clause identifying New York favors personal jurisdiction over defendant in New York" (citing *Jim Beam Brands Co. v. Tequila Cuervo La Rojeña S.A. de C.V.*, 881 N.Y.S.2d 421, 421 (1st Dep't 2009))). True, "a New York choice of law clause in the parties' agreement is not the equivalent of a choice of forum clause." *Borden, Inc. v. Meiji Milk Prods. Co.*, 919 F.2d 822, 827 (2d Cir. 1990) (citation omitted). So "[a] choice of law provision in an agreement, while relevant, is insufficient by itself to confer personal jurisdiction over a defendant in New York under C.P.L.R. § 302(a)(1)." *America/Int'l 1994 Venture v. Mau*, 42 N.Y.S.3d 188, 202 (2d Dep't 2016); *see also Hood v. Ascent Med. Corp.*, 691 F. App'x 8, 11 (2d Cir. 2017). But the choice of law provision is not the only provision KLG relies on to establish

jurisdiction.  It is instead a "significant factor" that bolsters the conclusion that the Court has personal jurisdiction over the Client Defendants.  *Sunward*, 362 F.3d at 23.

Defendants' attempts to distinguish *Fischbarg* are unavailing.  Defendants first argue that Kogan solicited them rather than vice versa.  That argument is unconvincing for two reasons.

First, even if it were true that Kogan solicited the Client Defendants and not the other way around, *Fischbarg*'s analysis did not depend exclusively on solicitation.  Rather, *Fischbarg* noted *both* that the defendants there solicited Fischbarg in New York *and* that they "repeatedly project[ed]" themselves into New York by communicating with Fischbarg.  9 N.Y.3d at 385.  The Client Defendants do not deny that they projected themselves into New York by calling and emailing Kogan.  So even if the Client Defendants did not solicit Kogan, that fact alone does not distinguish *Fischbarg*.

Second, there is a dispute of fact about who solicited whom.  Defendants argue that Kogan solicited them.  *See, e.g.*, Robert Brace Dec. ¶ 15.  But Kogan claims the opposite; he says that Robert and Beverly Brace solicited him.  *See* Kogan Dec. ¶¶ 10-11.  When the parties present conflicting affidavits like these, "all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Seetransport Wiking*, 989 F.2d at 580 (citation omitted).  Thus, the Court accepts, as it must for purposes of this motion, that Robert and Beverly Brace solicited Kogan.

Defendants cite *Navaera Sciences, LLC v. Acuity Forensic Inc.* in support of their position, but that case did not involve an attorney-client relationship.  667 F. Supp. 2d 369 (S.D.N.Y. 2009). There, the plaintiff sued the defendant for "breach of a software sales agreement and misappropriation of plaintiffs' trade secrets."  *Id.* at 371.  *Fischbarg* is more persuasive because it is more factually analogous.  And even if *Navaera* were more persuasive than *Fischbarg*, the latter binds the Court because it was decided by the New York Court of Appeals.  Defendants argue that "*Navaera* is controlling precedent," Reply Memorandum of Law, Dkt No. 59, at 4 (capitalization

altered), but any 1L can tell you that is incorrect:  *Fischbarg*, decided by New York's highest court on an issue of state law, is the controlling precedent.  *See Matthews v. Barr*, 927 F.3d 606, 622 n.11 (2d Cir. 2019) ("[F]ederal courts are bound by the highest state court's interpretations of state law"). *Navaera* has persuasive value but does not control this Court's evaluation of a state law issue. Because the Court has personal jurisdiction over the Client Defendants under *Fischbarg*, Defendants' argument based on *Navaera* is unavailing.

The Court's exercise of personal jurisdiction over the Client Defendants accords with due process.  The first step in the due process analysis—whether the Client Defendants had the requisite "minimum contacts" with New York—is satisfied for the same reasons that support the Court's conclusion that it has jurisdiction under the New York long-arm statute.  *See Chloé*, 616 F.3d at 171 (holding that the plaintiff satisfied the minimum contacts prong of due process analysis "for the same reasons that it satisfie[d] New York's long-arm statute").

The second step in the due process analysis—whether "those contacts in light of other factors determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice"—is also satisfied here.  *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018) (quotation and ellipsis omitted).

> The Supreme Court has set forth five factors that must be considered when determining the reasonableness of a particular exercise of jurisdiction:  "A court must consider [1] the burden on the defendant, [2] the interests of the forum State, and [3] the plaintiff's interest in obtaining relief.  It must also weigh in its determination [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and [5] the shared interest of the several States in furthering fundamental substantive social policies."

*Chloé*, 616 F.3d at 173 (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987).  It is true that the Client Defendants would face some burden if forced to travel to New York to litigate this case.  But that burden is not excessive.  And New York's interest in ensuring its lawyers are paid and Kogan's interest in obtaining relief both favor exercising jurisdiction.

Ultimately, the conclusion that the "exercise of jurisdiction is unreasonable even though minimum contacts are present" is "exceptional[.]" *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 130 (2d Cir. 2002) (quotation omitted).  This case is not one of those exceptional few.  The exercise of jurisdiction over the Client Defendants comports with due process.[2]

### b. Non-Client Defendants

KLG has not met its burden to establish that the Court has personal jurisdiction over the Non-Client Defendants, however.  To begin with, KLG has not shown that it formed an attorney-client relationship with the Non-Client Defendants.  As recounted above, *Fischbarg* rested on the premise that there was an attorney-client relationship between the plaintiff and defendants.  Without such a relationship, *Fischbarg* does not support KLG's argument that the Court can exercise specific personal jurisdiction under New York's long-arm statute.  Thus, the Court must first determine whether KLG has shown that it formed an attorney-client relationship with the Non-Client Defendants.

KLG has not done so.  "Under New York law, the formation of an attorney-client relationship is governed by contract principles." *Latin Am. Fin. Grp., Inc. v. Pareja*, No. 04-cv-10082 (DLC), 2006 WL 2032627, at *7 (S.D.N.Y. July 19, 2006), *aff'd*, 266 F. App'x 61 (2d Cir. 2008) (citing *C.K. Indus. Corp. v. C.M. Indus. Corp.*, 623 N.Y.S.2d 410, 411 (3d Dep't 1995)).  Whether an attorney-client relationship exists "depends upon whether there is contractual privity and a legally binding contract." *Id.* (citations omitted).

The existence of an attorney-client relationship depends on a variety of factors, including:  "1) whether a fee arrangement was entered into or a fee paid; 2) whether a

---

[2] The Court is mindful that "[t]he state statutory and federal constitutional standards are . . . not co-extensive" under New York law. *Licci*, 673 F.3d at 61.  But "[i]n many cases, the jurisdictional analysis under the New York long-arm statute may closely resemble the analysis under the Due Process Clause of the Fourteenth Amendment." *Id.* at 61 n.11 (citing *Best Van Lines*, 490 F.3d at 242).  "This similarity of state-law and constitutional standards appears particularly evident with respect to N.Y. C.P.L.R. § 302(a)(1)[.]" *Id.* (citing *Chloé*, 616 F.3d at 166, 169; *Best Van Lines*, 490 F.3d at 247; *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508 (2007)).  Thus, it is unsurprising that the statutory and constitutional analyses closely parallel one another.

written contract or retainer agreement exists indicating that the attorney accepted representation; 3) whether there was an informal relationship whereby the attorney performed legal services gratuitously; 4) whether the attorney actually represented the individual in an aspect of the matter (*e.g.*, at a deposition); 5) whether the attorney excluded the individual from some aspect of a litigation in order to protect another (or a) client's interest; 6) whether the purported client believed that the attorney was representing him and whether this belief was reasonable."

*Id.* (quoting *M.J. Woods, Inc. v. Conopco, Inc.*, 271 F. Supp. 2d 576, 585 (S.D.N.Y. 2003)).

"New York courts have observed that 'one party's unilateral beliefs and actions do not confer upon him or her the status of client.'" *Id.* at *8 (quoting *Solondz v. Barash*, 639 N.Y.S.2d 561, 564 (3d Dep't 1996)). The reverse must also be true: An attorney's "unilateral beliefs and actions" cannot create an attorney-client relationship. *Solondz*, 639 N.Y.S.2d at 564. "[T]he burden of establishing an attorney-client relationship rests with the party invoking it[.]" *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 128 (N.D.N.Y. 2007) (citing *In re Cnty. of Erie*, 473 F.3d 413, 417-18 (2d Cir. 2007)). A litigant must prove an attorney-client relationship "by competent and specific evidence, rather than by conclusory or ipse dixit assertions." *Id.* at 128-29 (quoting *In re Omnicom Grp. Inc. Sec. Litig.*, 233 F.R.D. 400, 404 (S.D.N.Y. 2006)).

KLG has not met its burden to show that it formed an attorney-client relationship with the Non-Client Defendants. Most importantly, the Non-Client Defendants did not sign the Engagement Agreement. If KLG intended to enter into an attorney-client relationship with the Non-Client Defendants, it should have included them as parties to the Engagement Agreement. *Cf.* 22 N.Y.C.R.R. § 1215.1 (requiring lawyers in civil matters with an anticipated fee greater than $3,000 to provide the client with a letter of engagement). Indeed, the first cause of action in KLG's complaint is a claim for breach of the Engagement Agreement. Just as generally "[t]here can be no breach of contract claim against a non-signatory to the contract," *Randall's Island Aquatic Leisure, LLC v. City of New York*, 938 N.Y.S.2d 62, 62 (1st Dep't 2012) (citation omitted), so too a non-signatory cannot generally be subjected to jurisdiction based on a contract it didn't sign.

13

It makes sense that the Non-Client Defendants were not parties to the Engagement Agreement because they are not parties to the Pennsylvania Litigation.  *See, e.g.*, *United States v. Robert Brace*, No. 1:17-cv-6 (BR) (naming Robert Brace, Robert Brace Farms, and Robert Brace and Sons, Inc. as defendants).  Because the Non-Client Defendants were non-parties to the Pennsylvania Litigation, they did not need an attorney.  Thus, it was reasonable for the Non-Client Defendants to believe that they were not forming an attorney-client relationship with KLG.  Even if Kogan believed the opposite, that unilateral belief does not meet KLG's burden to show an attorney-client relationship.

KLG's other evidence also does not meet its burden to show that it had an attorney-client relationship with the Non-Client Defendants.  Kogan attests that "it was axiomatic that KLG was representing all the Defendants, not just Robert Brace and the family companies."  Kogan Dec. ¶ 36.  This conclusory assertion is unpersuasive.  KLG notes that Kogan drafted declarations for each of the Non-Client Defendants.  *Id.* ¶¶ 38, 41.  Again, however, KLG has not presented evidence that the Non-Client Defendants were parties to the Pennsylvania Litigation.  Thus, at least absent additional evidence, it is reasonable to infer that Kogan drafted those declarations in his capacity as attorney for the Client Defendants—not that he formed an attorney-client relationship with the Non-Client Defendants.  An attorney does not automatically form an attorney-client relationship with a declarant by drafting a declaration for use in litigation.  It is hard to imagine that Kogan believes otherwise; if he does, then that belief is unreasonable.  KLG also points to evidence that Kogan met with the entire Brace family, including the Non-Client Defendants, in Pennsylvania and discussed litigation strategy.  *Id.* ¶ 45.  Yet that shows only that the Non-Client Defendants were interested in the Pennsylvania Litigation, not that they wanted to become KLG's clients.  This thin evidence is inadequate to carry KLG's burden to show that it formed an attorney-client relationship with the Non-Client Defendants.

Because KLG has not shown that it formed an attorney-client relationship with the Non-Client Defendants, *Fischbarg* does not support the Court's exercise of jurisdiction over those Defendants under New York's long-arm statute.  And KLG's other proposed bases for personal jurisdiction are inadequate.

KLG tries to use the Non-Client Defendants' associations with the Client Defendants to establish jurisdiction.  But long-arm jurisdiction must turn on a "defendant's independent activities[.]"  *Fischbarg*, 9 N.Y.3d at 383 (emphasis and quotation omitted).  For each Defendant, the question is whether that defendant "purposefully avail[ed] itself of the privilege of conducting activities within New York."  *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377 (2014) (citations and brackets omitted).  Thus, KLG cannot meet its burden to establish the Court's jurisdiction over the Non-Client Defendants merely through their close relationship with the Client Defendants.

KLG also argues that the evidence showing the Non-Client Defendants called and emailed him in New York is adequate to establish personal jurisdiction over them.  *See* Kogan Dec. ¶ 37.  But in these circumstances, interstate communications cannot justify the exercise of jurisdiction over the Non-Client Defendants.  Such communications were important in *Fischbarg* because they were part of an ongoing attorney-client relationship with a New York-based lawyer.  It would stretch *Fischbarg* far past its breaking point to conclude from that case that anytime a defendant calls or emails a New Yorker, she purposefully avails herself of the privilege of doing business in New York.  Without an attorney-client relationship, the Non-Client Defendants' calls and emails to Kogan are inadequate to sustain the Court's exercise of jurisdiction.

KLG finally argues in passing that Robert Brace acted as the agent of the Non-Client Defendants, but this argument comes up short.  It is true that "[a] defendant can be subjected to personal jurisdiction by its own actions or those of its agents."  *SHLD, LLC v. Hall*, No. 15-cv-6225 (LLS), 2016 WL 659109, at *4 (S.D.N.Y. Feb. 17, 2016) (citing *Owens v. Freeman*, 884 N.Y.S.2d 791 (3d Dep't 2009)).  "To establish an agency relationship for purposes of personal jurisdiction, a

plaintiff must show that the alleged agent acts for the benefit of, and with the knowledge and consent of, the non-resident principal, and over which that principal exercises some control." *Id.* (quoting *Bidonthecity.com LLC v. Halverston Holdings Ltd.*, No. 12-cv-9258 (ALC) (MHD), 2014 WL 1331046, at *4 (S.D.N.Y. Mar. 31, 2014)).  Kogan has failed to meet that standard here because he has not shown that the Non-Client Defendants exercised control over Robert Brace.  So Kogan's agency argument is unconvincing.

KLG has not met its burden to establish that the Court has jurisdiction over the Non-Client Defendants.  Rather than dismiss those Defendants from the case, however, the Court will transfer the case to the Western District of Pennsylvania.

**B. Motion to Transfer Venue**

**1. Legal Standard**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "District courts have broad discretion" to determine "convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis."  *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) (citation omitted).  District courts consider several factors, including

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*Id.* at 106-07 (quoting *Albert Fadem Tr. v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002)) (brackets omitted); *see also Gottlieb v. Sec. & Exch. Comm'n*, 723 F. App'x 17, 19 (2d Cir. 2018).[3]

---

[3] Even when a court lacks personal jurisdiction over a defendant, 28 U.S.C. § 1406(a) permits it to transfer a case to another district where the case could have been brought if it is in "the interest of justice" to do so.  *See Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 435 (2d Cir. 2005) (collecting cases).  Thus, the Court may transfer this case even though it lacks personal jurisdiction over the Non-Client Defendants.

"[T]he party requesting transfer carries the 'burden of making out a strong case for transfer.'" *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (quoting *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)). District courts "have consistently applied the clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion." *Id.* (collecting cases).

### 2. Application

The Court grants Defendants' motion to transfer this case because efficiency and convenience support that conclusion. Most importantly, the Court has jurisdiction over only some Defendants. This raises the possibility of parallel lawsuits, which would be an inefficient use of judicial resources. Transferring the case avoids this problem because there is no dispute that jurisdiction is proper in Pennsylvania. This weighs strongly in favor of transferring the case.

Applying the factors summarized in *D.H. Blair* also favors transferring the case. To begin with, the locus of operative facts is in Pennsylvania. The locus of operative facts is a "primary" consideration "in determining a § 1404(a) motion to transfer." *E. Mishan & Sons, Inc. v. Smart & Eazy Corp.*, No. 18-cv-3217 (PAE), 2018 WL 6528496, at *10 (S.D.N.Y. Dec. 12, 2018) (citing *Smart v. Goord*, 21 F. Supp. 2d 309, 316 (S.D.N.Y. 1998)). "To determine the locus of operative facts, a court must look to the site of the events from which the claim arises." *Id.* (quoting *AVEMCO Ins. Co. v. GSV Holding Corp.*, No. 96-cv-8323 (LAP), 1997 WL 566149, at *6 (S.D.N.Y. Sept. 11, 1997)). "In a contract case, the locus of operative facts is determined by the location where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred." *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 745 (S.D.N.Y. 2013) (citing *Ivy Soc'y Sports Grp., LLC v. Baloncesto Superior Nacional*, No. 08-cv-8106 (PGG), 2009 WL 2252116, at *6 (S.D.N.Y. July 28, 2009)). Ultimately, this inquiry "focuses on 'the degree of relationship between the forum and the cause of action.'" *Mishan*, 2018 WL 6528496, at *10 (quoting *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 21 (S.D.N.Y. 2012)).

17

The locus of operative facts here is in Pennsylvania.  This case arises from a fee dispute about litigation in Pennsylvania.  Kogan traveled to Pennsylvania repeatedly over the course of that litigation.  *See, e.g.*, Kogan Dec. ¶ 45.  Robert Brace also attests that he signed KLG's retainer letter in Pennsylvania in January 2017.  Robert Brace Dec. ¶ 16.  On the other hand, after Robert and Beverly Brace met Kogan at a conference in New York, none of the Braces ever went there.  For those reasons, Pennsylvania has a stronger relationship to this dispute than does New York.

Other *D.H. Blair* factors also support transferring the case.  Although the Court does not know the full roster of witnesses that will appear if this case goes forward, it seems likely that Kogan and the four individual Brace defendants would all need to appear as witnesses.  On balance, that supports transferring the case to Pennsylvania because there are more witnesses in Pennsylvania than in New York.  Pennsylvania courts may also be able to compel the testimony of non-party witnesses.  For example, Kogan attests that he communicated with Rhonda McAtee, another member of the Brace family.  Kogan Dec. ¶ 44.  If Kogan wants her to testify but she refuses, a Pennsylvania court would have the power to compel her testimony.  Thus, the availability of process to compel the attendance of unwilling witnesses also supports transfer.

Kogan's choice of this forum weighs against a transfer, but other considerations overcome that factor here.  It is true that "[a] plaintiff's choice of forum is accorded considerable weight in the § 1404(a) balancing test."  *Sec. & Exch. Comm'n v. Hill Int'l, Inc.*, No. 20-cv-447 (PAE), 2020 WL 2029591, at *8 (S.D.N.Y. Apr. 28, 2020) (quoting *SBAV LP v. Porter Bancorp, Inc.*, No. 13-cv-372 (PAE), 2013 WL 3467030, at *13 (S.D.N.Y. July 10, 2013)).  But "the emphasis placed by a court on this choice diminishes where the operative facts upon which the litigation is brought bear little material connection to the chosen forum."  *Hamilton v. Mead*, No. 18-cv-9734 (CM), 2019 WL 949009, at *8 (S.D.N.Y. Feb. 14, 2019) (quoting *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998)).  In the circumstances presented here, other factors outweigh Kogan's choice of forum.

## IV. CONCLUSION

The Court has personal jurisdiction over the Client Defendants because they formed an attorney-client relationship with KLG and projected themselves into the New York legal services market.  But the Court does not have personal jurisdiction over the Non-Client Defendants.  For that reason and the other reasons outlined above, Defendants' motion to dismiss for lack of personal jurisdiction is DENIED but its motion to transfer this case to the Western District of Pennsylvania is GRANTED.

The Clerk of Court is directed to terminate the motion pending at Dkt No. 38 and to transfer this case to the Western District of Pennsylvania without delay.

SO ORDERED.

Dated:  August 26, 2020
New York, New York

_____
GREGORY H. WOODS
United States District Judge